## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Mr. James Lane                              *
100 North Broadway
Baltimore, Maryland 21231                   *

      Plaintiff                          *

v.                                          *       Case No. _____
                                                    JURY TRIAL DEMANDED
                                            *

Sheriff John W. Anderson
100 N. Calvert Street                       *
Room 104
Baltimore, Maryland 21202                   *
(*In his official and personal capacity*)
                                            *
and

Mayor & City Council of                     *
Baltimore
City Hall                                   *
100 N. Holliday Street
Baltimore, Maryland 21202                   *

and                                         *

Colonel Marcus L. Brown                     *
Maryland Police Training Commission
6852 4ᵗʰ Street                             *
Sykesville, Maryland 21784
(*as Chairman of the Maryland*              *
*Police Training Commission, for*
*affirmative injunctive relief only*)       *

      Defendants                         *
_____/

### PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF, AFFIRMATIVE INJUNCTIVE RELIEF, MONEY DAMAGES, AND JURY TRIAL DEMAND

#### INTRODUCTION, JURISDICTION AND VENUE

1.      With respect to the claims against Defendants Sheriff John W. Anderson and the Mayor

& City Council of Baltimore (aka Baltimore City Government, abbreviated herein as "MCCB"), this is an employment civil rights case involving deprivations of rights contained in the First Amendment of the U.S. Constitution, made actionable pursuant to 42 U.S.C. § 1983, as well as violations of Maryland's Declaration of Rights.  With respect to the claims against Col. Marcus Brown, the Chairperson of the Maryland Police Training Commission (an agency of the State of Maryland), this is a civil rights case involving deprivations of rights contained in the First Amendment and the Due Process Clause of the U.S. Constitution, made actionable pursuant to 42 U.S.C. § 1983, as well as violations of Maryland's Declaration of Rights.

2.      The Plaintiff, Mr. James Lane, is a citizen of Baltimore City, Maryland.

3.      The Plaintiff sues the Sheriff of Baltimore City, John W. Anderson in his official and personal capacity.

4.      Plaintiff also sues Defendant MCCB, which as a local government, consists of numerous agencies including the Baltimore City Sheriff's Office ("BCSO").

5.      Plaintiff brings suit against Col. Marcus Brown, Chair of the Maryland Police Training Commission ("MPTC"), an agency of the State of Maryland, seeking only injunctive and declaratory relief.

6.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331.

7.      Venue is proper pursuant to 28 U.S.C. § 1391.

## PRELIMINARY STATEMENT

8.      The Plaintiff files this lawsuit, under 42 U.S.C. §1983, seeking money damages and other relief based on a theory that Plaintiff was subjected to retaliation based on his First Amendment protected activity (speech).

9.      Plaintiff seeks to hold liable the Mayor & City Council of Baltimore, Maryland

(MCCB) for money damages under a theory that Defendant Sheriff Anderson is a final decision and policy maker with respect to BCSO, an agency of the MCCB.  The actions of Defendant Sheriff Anderson reflect the policy of the MCCB with respect to the employment of Deputy Sheriffs, such as the Plaintiff.

10.     The evidence in this case will reveal that the BCSO is so connected and dependent upon, as a practical matter, to MCCB (and its elected officials), that it is a "person" within the meaning of 42 U.S.C. § 1983, despite the mistaken notion that it is State agency.  (For purposes of Fed.R.Civ.P. 11, the Plaintiff recognizes that a few Courts, under limited factual development, have held certain other Sheriff agencies in the State of Maryland to be State agencies and thus protected by the 11th Amendment.  See, e.g., Kronk v. Carroll County, et al., 2012 WL 245059, *6 (D. Md. Jan. 25, 2012).   However, the law appears to be evolving, Durham v. Somerset County, MD, et al., 2013 WL 5962958, *2 (D. Md. Nov. 6, 2013) (denying reconsideration of an earlier ruling that Somerset County, Maryland could be liable for the employment decisions of the Sheriff of Somerset County, affirming an earlier ruling by Judge Nickerson that the possibility that some cases from this Court "categorically holding that county sheriffs acting in their official capacities are always state actors may have been wrongly decided" was "eminently reasonable.") (Bredar, J.).  Plaintiff contends that those cases holding Sheriffs as protected by the 11th Amendment of the U.S. Constitution are factually distinguishable, that MCCB sets employment policies within the BCSO, and that controlling Fourth Circuit precedence lends support to the Plaintiff's claim that Defendant Sheriff Anderson, in his official capacity, is not entitled to 11th Amendment immunity and Sheriff Defendant Anderson, at least when carrying out employment policies of the BCSO, is a "person" for purposes of Federal law, 42 U.S.C. § 1983).  Moreover, as part of his role in

terminating the Plaintiff (and otherwise administering personnel matters), Defendant Sheriff Anderson was acting as a final policymaker for the MCCB, and it is the MCCB who actually employed and controlled all facets of the Plaintiff's employment and the employment of other personnel within the BCSO.

11.     Alternatively, even if recognized as a State agency and afforded the protections of the 11th Amendment to the U.S. Constitution, the Plaintiff seeks affirmative injunctive relief such as unconditional reinstatement and declaratory judgment against Defendant Sheriff Anderson.

12.     The Plaintiff sues the Col. Marcus Brown, Chair of the MPTC ("Defendant MPTC"), seeking affirmative injunctive relief under 42 U.S.C. § 1983, for denying the Plaintiff his right to Due Process and otherwise derivatively retaliating against Plaintiff for the lawful exercise of his First Amendment right to engage in protected speech, insofar as Defendant MPTC revoked the Plaintiff's law enforcement powers (automatically, and without a hearing, upon Plaintiff's unlawful termination).

### FACTUAL BACKGROUND

13.     Plaintiff began working for the BCSO on or about January 29, 2003 as a Deputy Sheriff.

14.     On September 15, 2008, the Plaintiff and a team of other law enforcement officers, part of a Warrant Apprehension Task Force, were involved in serving a warrant to a subject when the Plaintiff was shot in the face.

15.     A fellow law enforcement then shot an individual who was allegedly the shooter, and a gun was found near the suspect.

16.     A forensic examination of the shooting was not conducted.  For example, the bullet that struck the Plaintiff was never recovered, making it difficult to determine whether the suspect fired the shot that struck the Plaintiff.

17.     When Plaintiff raised doubts about whether he was accidentally shot by another Deputy Sheriff, his superiors told him to forget about it.

18.     When Plaintiff and two other Deputy Sheriffs questioned the shooting, they were transferred out of the Warrant Apprehension Task Force.

19.     Plaintiff later gave a media interview raising doubts over whether the shooting was "friendly fire," in other words, whether he was shot by another law enforcement officer.

20.     On December 15, 2010, Plaintiff conducted an interview with Fox 45 News and "Investigative Voice," a web-based media outlet.  The media outlet had questions about the internal investigation into the shooting of Plaintiff and how the BCSO had handled it.  The media report revolved around the question of whether Plaintiff was shot by a suspect, or whether the BCSO was covering up the shooting of the Plaintiff by another Deputy Sheriff.

21.     During the interview, the Plaintiff was questioned over information that was leaked concerning the fact that he had passed a polygraph examination but another Deputy Sheriff had failed his examination, each of these examinations involving the events surrounding his shooting.  The Plaintiff responded to the question by implying that it was possible that the examination revealed that the Deputy Sheriff was deceptive.  The Plaintiff also discussed how he felt about the matter and being the target of an investigation into whether the Plaintiff had given inconsistent and false statements concerning the shooting.

22.     A copy of an article appearing on the internet is attached as Exhibit 1.

23.     It was not any part of Plaintiff's job or job duties to talk with the media concerning the matter.  Indeed, Plaintiff had no permission from the BCSO to speak about the matter.

24.     Subsequently, in March 2011, Plaintiff was presented with internal charges stemming from his news interview.  A "Trial Board" (administrative review) convened on December 5,

2011, and the Plaintiff was found guilty of conduct reflecting unfavorably upon the agency and/or any of its members; that he had publicly criticized the agency; and otherwise deliberately engaged in conduct reflecting unfavorably upon the agency and/or its members.

25.     The Trial Board recommended a five day suspension without pay.

26.     On January 31, 2012, Defendant Sheriff Anderson disregarded the Trial Board's recommendation, and instead upped the punishment and terminated the Plaintiff from his employment.

27.     On February 13, 2012, the BCSO sent notification to Defendant MPTC that the Plaintiff had been involuntarily terminated "related to administrative or criminal investigation or charge."

28.     This notice was received by Defendant MPTC on February 16, 2012, whereupon the MPTC terminated the law enforcement certification of the Plaintiff, based on Defendant Sheriff Anderson's personnel decision, without hearing much less a notice.

### FACTUAL ALLEGATIONS
### SUPPORTING PLAINTIFF'S CLAIM THAT THE BALTIMORE CITY SHERIFF IS THE OFFICIAL POLICY MAKER FOR THE MCCB AS TO THE EMPLOYMENT OF SHERIFF DEPUTIES

29.     Plaintiff incorporates paragraphs 1 – 28 as set forth above, and states that a policy, practice, and custom exists wherein MCCB, through its elected officials and its human resource and budgetary administrators, participate in and maintain control over the employment over Deputy Sheriffs such as the Plaintiff in this case, jointly employing personnel classified as Sheriff Deputies within the BCSO, and/or that Defendant Sheriff Anderson is the chief policymaker for Defendant MCCB with respect to the employment of Sheriffs Deputies within the BCSO, for among other reasons:

a.      Officials within MCCB and the BCSO share considerable amounts of private

information regarding personnel applying to, and working within, the BCSO.

b.     The MCCB, through its agencies, administers all employment benefits and programs for Deputy Sheriffs, such as the Plaintiff.

c.     The MCCB provides employment benefits such as health care and leave benefits to Deputy Sheriffs, such as the Plaintiff.

d.     The BCSO is entirely funded by the MCCB, including payment for salaries for Deputy Sheriffs such as the Plaintiff.  The MCCB receives no direct state financing. Upon information and belief, if a judgment is entered against Deputy Sheriff, the MCCB pays at least part of the judgment to indemnify the Deputy Sheriff.

e.     Deputy Sheriffs, such as the Plaintiff, receive a paycheck from the MCCB and those monies are collected by the MCCB through its taxing authority.

f.     The MCCB pays all employer-sided taxes with respect to Deputy Sheriffs, and upon information and belief, provides for worker compensation coverage for Deputy Sheriffs such as the Plaintiff.

g.     If a Deputy Sheriff is subject to wage garnishment, the MCCB responds and admits that it is an employer and withholds garnished wages.

h.     MCCB pays the Defendant Sheriff Anderson's salary and provides him with all leave and health benefits.

i.     Upon information and belief, MCCB pays (or receives less tax receipts from) the State of Maryland for the retirement contributions made to the State of Maryland pension system for the Sheriff and Deputy Sheriffs.

j.     All salaries and leave and health benefits are paid for and provided by the authority of the MCCB.  The MCCB can order a layoff of Deputy Sheriffs within the

SCSO, without regard to any decision by the Sheriff.

k.      The MCCB refers, on its own website, to the BCSO as one of its "governmental entities" and Defendant Sheriff Anderson as an "agency head." https://data.baltimorecity.gov/City-Government/Baltimore-City-Government-Entities/cut3-c4bx (last visited November 30, 2014).

l.      In fact, the MCCB discloses the amount of funds its provides the BCSO in payment of salaries, see https://data.baltimorecity.gov/City-Government/Aggregate-Salary-by-Agency/pgfd-zn5i (last visited November 30, 2014), and the MCCB publicly discloses on its website the amount of wages that it paid the Plaintiff in 2011.  (Exh. 2).

m.      MCCB is responsible for making unemployment payments for discharged Sheriff Deputies otherwise eligible for unemployment benefits.  MCCB is also responsible for worker's compensation payments to injured Sheriff Deputies.  Plaintiff has received both unemployment insurance paid by MCCB and worker's compensation benefits paid by MCCB.

n.      MCCB provides human resource advice to the BCSO, involving not just the Plaintiff but other employees working within the BCSO.

o.      MCCB, through its agencies, maintains personnel records for the BCSO, including personnel records of the Plaintiff.  MCCB is responsible for compliance with various record keeping requirements for personnel performing work for the BCSO, including Federal immigration law ("I-9") records.

p.      The BCSO and the MCCB share considerable private information between each other concerning Sheriff Deputies, including the Plaintiff.

q.      The MCCB has a Civilian Review Board which may investigate and refer

Sheriffs' Deputies of the BCSO for discipline, which may include discharge, based on complaints made against the Sheriff Deputy.

r.      The MCCB holds the BCSO out to the public as one of its own public agencies, and certainly holds itself out as the employer of Sheriffs Deputies.

30.    Plaintiff incorporates paragraphs 1 – 29 and all subparagraphs, as set forth above, and states that the Sheriff of Baltimore City is the final decision-maker with respect to the employment policies concerning Sheriff Deputies, and thus, Defendant Sheriff Anderson termination of the Plaintiff in this case reflects the official employment policies and practices involving the employment of Deputy Sheriffs within the BCSO, and as the true employer of Deputy Sheriffs within the BCSO, MCCB is liable for the Defendant Sheriff Anderson's unconstitutional and retaliatory action towards Plaintiff.

31.    As Sheriff of BCSO, Defendant Sheriff Anderson is tasked with supervising personnel within the BCSO, and he makes employment decisions and formulates, agrees upon, and administers personnel policies and personnel decisions as to Deputy Sheriffs employed by the MCCB.   Deputy Sheriffs do not get hired or fired without Defendant Sheriff Anderson's decision.   Once a termination decision is made, such as the decision of Defendant Sheriff Anderson to unlawfully terminate the Plaintiff, Defendant Sheriff Anderson carries out final policymaking authority for MCCB with respect to the administration of personnel matters for the BCSO.

### COUNT I
### FIRST AMENDMENT RETALIATION – FREEDOM OF SPEECH
### 42 U.S.C. § 1983
### (DEFENDANT SHERIFF ANDERSON, IN HIS PERSONAL AND OFFICIAL CAPACITIES)
### (A "MONELL" CLAIM, SEEKING MONEY DAMAGES AND OTHER RELIEF)
### (RETALIATORY DISCHARGE)

32.    Plaintiff incorporates paragraphs 1 – 31 and all subparagraphs as set forth above, and

states that his actions in speaking with the media, expressing his views and concerns about the abuse of authority, retaliatory investigations, the mishandling of evidence, and claims that the BCSO was covering up the fact that Plaintiff was shot by a fellow Deputy Sheriff, were protected expressions regarding matters of public concern; that he had no job duty or responsibility in speaking to the media concerning such subjects but rather was speaking as a citizen; that no confidential information was disclosed by the Plaintiff as part of his communications, that Plaintiff's interest in First Amendment expression as a citizen outweighs any disruptive effect that the communications may have created, and that as a result, the Plaintiff was deprived, and continues to be deprived, of his unique and valuable position as a Deputy Sheriff, and a causal relationship exists between his protected expression on matters of public concern as a citizen and the aforementioned adverse employment action by Defendant Sheriff Anderson.

33.    Pursuant to a custom and practice between the BCSO and the MCCB, Defendant Sheriff Anderson generally sets the policymaking authority with respect to employment matters in the BCSO, and in this particular case, Defendant Sheriff Anderson was given final authority and approval to terminate the Plaintiff by the MCCB.  As a result, Defendant Sheriff Anderson, in his official capacity, is a "person" pursuant to 42 U.S.C. § 1983.

34.    The BCSO has no right to contribution or indemnification from the State of Maryland's treasury, and accordingly, Defendant Sheriff Anderson is not an arm of the State of Maryland, and no dignity of the State of Maryland would be offended by this Court granting damages against Defendant Sheriff Anderson in this *Monell* action, given the policy, practice and custom of BCSO setting the employment policies for the MCBB.  As a result, Defendant Sheriff Anderson, in his official capacity, is not an "arm" of the State of Maryland and has no 11th

Amendment immunities.

35.     The actions complained of herein violated the Plaintiff's right to free speech under the

First Amendment of the U.S. Constitution.

**COUNT II**
**FIRST AMENDMENT RETALIATION**
**42 U.S.C. § 1983**
**(DEFENDANT MCCB)**
**(A "MONELL" CLAIM, SEEKING MONEY DAMAGES AND OTHER RELIEF)**
**(RETALIATORY DISCHARGE)**

36.     Plaintiff incorporates paragraphs 1 – 35 as set forth above, and states that MCCB is, at a

minimum, a joint/integrated employer of the Plaintiff, that MCCB, pursuant to a policy,

practice, and custom of participating in and maintaining control over the employment over

Deputy Sheriffs, such as the Plaintiff in this case, is liable for the actions of its policy and

decision maker, the Sheriff of Baltimore City, based on the MCCB awareness of and

participation in the authorizing Defendant Sheriff Anderson, or otherwise condoning the

constitutional violations alleged herein by Plaintiff, and that this policy, practice and custom

manifested itself in the tangible employment actions involving the Plaintiff, including but not

limited to, supporting the disciplinary process of the Plaintiff by funding same (through paying

the salary of the private attorney Karen Kruger, Esq., who prosecuted the Plaintiff at the Trial

Board), and that Defendant Sheriff Anderson, who is (or is one of) the chief decision-makers

for personnel actions involving the BCSO, due to the authority granted in him by the BCSO,

harshly administers and enforces a specific policy, practice, custom, rule and regulation which

exists within MCCB, and the Baltimore City Sheriff's Office, an agency of the MCCB, which

both facially and as applied to this Plaintiff's factual circumstances, violates the rights of this

Plaintiff to speak publicly regarding the functioning and activities of an agency of the

Defendant Baltimore City, Maryland government, and that this policy, practice, custom, rule

and regulation of the BCSO's punishes all expressions of speech and grievance petitions, regardless of whether the information made public as part of the speech or by the grievance petition is confidential or otherwise burdens government operations in such a way that might otherwise permit regulation of speech.

37.      Furthermore, there exists a causal relationship between Plaintiff's protected expressions on matters of public concern as a citizen, and the policies, practices, customs, rules and regulations of MCCB and the BCSO, both written and unwritten, and the Plaintiff's termination of employment.

38.      Accordingly, because the constitutionally offensive act of Defendant Sheriff Anderson in terminating the Plaintiff's employment was ostensibly taken pursuant to some policy, practice, custom, rule and regulation allowed, authorized, and set by MCCB, and because Defendant Sheriff Anderson carries out the employment policies of the MCCB as to their employment of Deputy Sheriffs such as the Plaintiff, the MCCB is liable to the Plaintiff for the actions complained of herein.

### COUNT III
### FIRST AMENDMENT RETALIATION
### 42 U.S.C. § 1983
#### (DEFENDANT JONES, IN HIS OFFICIAL CAPACITY)
#### (ALTERNATIVE CLAIM FOR NON-MONEY DAMAGES)
#### (RETALIATORY DISCHARGE)

39.      Plaintiff incorporates paragraphs 1 – 38 as set forth above, and *alternatively* pleads and states that if Defendant Sheriff Anderson is determine to be entitled to 11th Amendment immunity and/or is not a "person" for purposes of a "Monell" claim brought pursuant to 42 U.S.C. § 1983, that Plaintiff nevertheless requests that this Court enter affirmative injunctive relief, to include, but not limited to, unconditional reinstatement of the Plaintiff, seeking waiver of any and all recertification requirements customarily required by the MPTC for applicants for

employment, purging of any of the Plaintiff's personnel files maintained by the BCSO with respect to his discipline and discharge, for declaratory judgment, based on the retaliatory termination of the Plaintiff, as more fully described in the paragraphs supra, and incorporated herein by reference.

**COUNT IV**
**FREEDOM OF SPEECH RETALIATION**
**ARTICLE 24, MARYLAND DECLARATION OF RIGHTS**
**(DEFENDANT MCCB)**
**(SEEKING MONEY DAMAGES AND OTHER RELIEF)**
**(RETALIATORY DISCHARGE)**

40.     Plaintiff incorporates paragraphs 1 – 39 as set forth above, and states that the MCCB is liable to the Plaintiff for state constitutional violations described in the proceeding paragraphs, because of the actions and inactions by Defendant MCCB as to the Plaintiff as more fully described supra, and allowing its agent, the Sheriff of the BCSO, to violate the constitutional rights of its joint employee, the Plaintiff, and for its own awareness of, participation in, and approval of the Plaintiff's termination in retaliation of the Plaintiff's speech protected by the First Amendment.

**COUNT V**
**DUE PROCESS VIOLATION**
**42 U.S.C. § 1983**
**MARYLAND DECLARATION OF RIGHTS ART. 24**
**(DEFENDANT COL. BROWN, o/b/o MPTC)**
**(SEEKING INJUNCTIVE RELIEF**

41.     Plaintiff incorporates paragraphs 1 – 40 as set forth above, and states Plaintiff has a property right protected by Due Process in his good name, right to pursue a career, and in his law enforcement certification; that Plaintiff has been blacklisted by Sheriff Anderson and the MPTC, who maintains a system whereby "red flags" may be placed on police officers, such as the Plaintiff, with those red flags operating to interfere with the reemployment and certification

of law enforcement officers who have been terminated by a law enforcement agency; that the MPTC maintains a red flag on the Plaintiff; and that the MPTC terminated the Plaintiff's law enforcement certification without notice or opportunity to be heard; and that the MPTC's actions, and more precisely, inactions, violate the Plaintiff's Federal and State Due Process rights.

42.    Plaintiff seeks affirmative injunctive relief and declaratory relief against Defendant MPTC under 42 U.S.C. § 1983 and Maryland's Declaration of Rights.

**COUNT VI**
**FIRST AMENDMENT RETALIATION**
**42 U.S.C. § 1983**
**MARYLAND'S DECLARATION OF RIGHTS ART. 40**
**(DEFENDANT MPTC)**

43.    Plaintiff incorporates paragraphs 1 – 42 as set forth above, and states that if the act of terminating Plaintiff's employment is deemed to violate his First Amendment rights, and if that act is Defendant MPTC's justification for terminating the Plaintiff's law enforcement certification, then Defendant MPTC's actions in revoking the Plaintiff's law enforcement certification likewise violate the First Amendment of the U.S. Constitution and Maryland's Declaration of Rights, Article 40.

44.    The action in revoking the Plaintiff's law enforcement certification violated the Plaintiff's clearly established right to freedom of speech protected under the First Amendment of the U.S. Constitution, as well as under Maryland's Declaration of Rights, Article 40.

45.    Plaintiff seeks affirmative injunctive relief pursuant to 42 U.S.C. § 1983 and Maryland's Declaration of Rights.

**WHEREFORE**, Plaintiff prays for Judgment:

(a)     Issuing an affirmative prospective injunction requiring Defendants Sheriff Anderson and the MCCB, to reinstate and reemploy the Plaintiff to his Deputy Sheriff position within the BCSO, and to otherwise direct Defendant Sheriff Anderson to promptly present to the MPTC a request that they recertify the Plaintiff;

(b)     Issuing an affirmative prospective injunction requiring Col. Marcus Brown the Chair of the MPTC, or any successor, to restore the Plaintiff's law enforcement certification;

(c)     Enter a Judgment against Defendants Sheriff Anderson and MCCB, to compensate the Plaintiff for economic and non-economic damages incurred by the Plaintiff, including but not limited to, the humiliation, stress, mental anguish, embarrassment, and loss of enjoyment of life suffered by the Plaintiff, in an amount no less than $5,000,000.00;

(d)     Awarding Plaintiff his costs and reasonable attorney's fees in this action, and attorneys' fees and costs; and

(e)     Granting declaratory judgment in favor of the Plaintiff with respect to each Count set forth in this lawsuit, and such other and further relief as this Court may deem just and proper.

Respectfully submitted,


_____ /s/_____
Howard B. Hoffman, Esq.
Attorney at Law
Federal Bar No. 25965
600 Jefferson Plaza, Suite 304
Rockville, Maryland 20852
(301) 251-3752
(301) 251-3753 (fax)

## **DEMAND FOR JURY TRIAL**

The Plaintiff, by his undersigned attorney, hereby demands a jury trial as to all issues triable by a jury.

Respectfully submitted,


_____ */s/* _____
Howard B. Hoffman, Esq.