IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JAMES LANE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-14-3739 |
| SHERIFF JOHN ANDERSON, *et al.*, | * | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiff James Lane ("Lane" or "Plaintiff") brings this 42 U.S.C. § 1983 action against Defendants Sheriff John Anderson ("Sheriff Anderson") and the Mayor and City Council of Baltimore (the "City") (collectively, "Defendants"),[1] alleging violations of his rights under the Free Speech Clause of the First Amendment of the United States Constitution, U.S. Const. amend. I, and the Maryland Declaration of Rights, Md. Code Ann., Const. Declaration of Rights, Art. 24. Lane, a former deputy sheriff of Baltimore City, claims that he was terminated as retaliation for the exercise of his free speech rights. Currently pending are Defendant Sheriff Anderson's Motion to Dismiss (ECF No. 3) and Defendant City's Motion to Dismiss (ECF No. 8). The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2014).  For the reasons that follow, Defendant Sheriff Anderson's Motion to Dismiss (ECF No. 3) is GRANTED and

---

[1] Lane originally named Col. Marcus Brown, the Chairperson of the Maryland Police Training Commission, as an additional defendant. Upon Plaintiff's motion, this Court dismissed Col. Brown without prejudice on August 13, 2015. *See* Mot. for Voluntary Dismissal, ECF No. 14; Order, ECF No. 15.

Defendant City's Motion to Dismiss (ECF No. 8) is GRANTED. This case is DISMISSED WITH PREJUDICE.

<u>BACKGROUND</u>

When ruling on a motion to dismiss, this Court must accept as true the facts alleged in the plaintiff's complaint.  *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). This action arises from certain comments made by Plaintiff James Lane to media outlets and the subsequent termination of his employment as a deputy sheriff for Baltimore City. Lane was hired as a deputy sheriff in the Baltimore City Sheriff's Office (the "BCSO") in 2003. Compl. ¶ 13. On September 15, 2008, Lane was shot in the face while attempting to serve a warrant. *Id.* ¶ 14. An unnamed law enforcement officer then shot the alleged shooter, next to whom a firearm was found. *Id.* ¶ 15.

During the investigation of the incident, Lane allegedly expressed "doubts" to his superiors as to the true identity of the shooter. *Id.* ¶ 17. Specifically, Lane believed that a fellow deputy sheriff shot him, and not the alleged shooter. *Id.* ¶ 17. In December 2010, while the investigation of the incident remained pending, he gave interviews with Fox 45 News and "Investigative Voice." *Id.* ¶ 20. During these interviews, he again voiced his belief that he was the victim of "friendly fire," and also questioned the BCSO's handling of the investigation. *Id.* Further, Plaintiff raised concerns that a fellow deputy sheriff lied in his account of the incident in furtherance of the BCSO's alleged efforts to ignore the friendly fire allegations. *Id.* ¶¶ 20-21.

Lane was subsequently charged with six violations of BCSO rules and policies. *Id.* ¶ 24; *see also* Def. Anderson's Mot. to Dismiss Ex. 1, ECF No. 3-2 ("Amended Baltimore

Sheriff's Office Notification of Charges").[2] These charges included, among others, "deliberately engaging in conduct which would reflect unfavorably upon the agency," making "false statements or misrepresenting any facts" when "acting in an official capacity," public criticism of the BCSO and its members, and representing the BCSO publicly without prior approval. Def. Sheriff Anderson's Mot. to Dismiss Ex. 1, at 1-4. Pursuant to the Law Enforcement Officers' Bill of Rights ("LEOBR"), Md. Code Ann., Pub. Safety § 3-107, a Trial Board was convened to review the charges. Compl. ¶ 24. The Board found Lane guilty of five charges, concluding that he had deliberately engaged in conduct reflecting unfavorably on the BCSO, publicly criticized the agency, and represented the agency publicly without prior approval. *Id.* The Board recommended that Plaintiff be suspended for five days without pay. *Id.*; *see also* Def. Sheriff Anderson's Mot. to Dismiss Ex. 3, 4-5, ECF No. 3-4 (*Baltimore City Sheriff's Office, et al. v. James Lane*, No. 1623 (Md. Ct. Spec. App. Jan. 16, 2014) (*slip opinion*)).[3]

---

[2] Generally, if a court does not exclude and considers materials extrinsic to the pleadings, the motion to dismiss is converted to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d). Yet, a court may consider matters outside of the pleadings, such as documents attached to a defendant's motion to dismiss, when the documents in question were "integral to and explicitly relied on in the complaint and if the plaintiff[] do[es] not challenge [their] authenticity." *Pasternak & Fidis, P.C. v. Recall Total Information Management, Inc.*, --- F. Supp. 3d ----, 2015 WL 1405395, *4 (D. Md. Mar. 25, 2015) (quoting *Tucker v. Specialized Loan Servicing, LLC*, --- F. Supp. 3d ----, 2015 WL 452285, *8 (D. Md. Feb. 3, 2015)). Lane specifically refers to the internal disciplinary charges levied against him after his media interviews. *See, e.g.*, Compl. ¶ 24. He does not dispute the authenticity of the Notification of Charges in Exhibit 1 of Sheriff Anderson's Motion to Dismiss. Moreover, when Lane appealed his termination, this document was included in the certified record presented to the Circuit Court for Baltimore City, Maryland and the Court of Special Appeals of Maryland. *See* Mem. in Supp. of Def. Sheriff Anderson's Mot. to Dismiss, 4, ECF No. 3-1. The document is thus a public record, and a court "may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment." *Clark v. BASF Salaried Emps.' Pension Plan*, 329 F. Supp. 2d 694, 697 (W.D.N.C. 2004) (quoting *Henson v. CSC Credit Servs.* 29 F.3d 280, 284 (7th Cir. 1994) (internal citations omitted)); *accord, Norfolk Fed'n of Business Dist. v. H.U.D.*, 932 F. Supp. 730, 736 (E.D. Va.), *aff'd* 103 F.3d 119 (4th Cir. 1996). This Court thus will consider the extrinsic document in question.

[3] This Court takes judicial notice of Sheriff Anderson's Exhibit 3, as an opinion of the Court of Special Appeals is a matter of public record. *See supra* n.2.

After reviewing the record of the administrative proceedings, Sheriff Anderson met with Lane and his attorney on January 31, 2012 to hear Lane's arguments and discuss the appropriate sanction. Def. Sheriff Anderson's Mot. to Dismiss Ex. 3, at 5-6. Sheriff Anderson "stated in detail his reasons for increasing the recommended penalty," informing Lane that he was to be terminated.[4] *Id.* at 6. He appealed his termination to the Circuit Court for Baltimore City, Maryland, raising only one charge upon which he had been found guilty[5] and his termination as the appropriate sanction. *Id.* at 5. The Circuit Court affirmed the guilty finding, but reversed Sheriff Anderson's decision to terminate Lane. *Id.* at 2. The Maryland Court of Special Appeals, considering solely the issue of Lane's termination, reversed the Circuit Court. *See generally id.* The Court of Special Appeals concluded that Sheriff Anderson had "unfettered discretion" to impose his own sanction, rather than the sanction recommended by the Trial Board. *Id.* at 7 (citing *Rivieri v. Baltimore Police Dep't*, 204 Md. App. 663, 42 A.3d 686, *cert. denied*, 427 Md. 610 (2012)). Lane was thus terminated as a deputy sheriff.

Plaintiff filed the instant action on December 1, 2014, alleging that Sheriff Anderson and the City violated his rights under the First Amendment of the United States Constitution

---

[4] Specifically, Sheriff Anderson explained his reasoning as follows:

> the nature of the acts of which [Lane had] been found guilty tends to bring the Agency into disrepute . . . [Lane was] not authorized to comment in public about an ongoing confidential investigation . . . [His] acts of misconduct in criticizing the Agency, accusing another deputy of lying during an internal investigation were divisive, disloyal to the mission of the sheriff's office and intended to undermine the effective operation of the Agency. These impacts cannot be minimized or remediated . . . I can no longer trust [Lane's] reliability and credibility.

Def. Sheriff Anderson's Mot. to Dismiss Ex. 3, at 6.
[5] On appeal to the Circuit Court, Lane challenged only the charge that he had accused a fellow deputy sheriff of lying. Def. Sheriff Anderson's Mot. to Dismiss Ex. 3, at 5.

and the Maryland Declaration of Rights. Specifically, Plaintiff claims that Sheriff Anderson is

a local, not a state, official, and thus is subject to monetary damages (and other relief) under

42 U.S.C. § 1983 (Count I). In the event that this Court concludes that Sheriff Anderson is a

state official, Lane alleges an alternative claim solely for injunctive relief (Count III). On the

theory that Sheriff Anderson is a local officer, Plaintiff also brings a *Monell*[6] claim (Count II)

and a claim under the Maryland Declaration of Rights (Count IV) against the City.[7] Sheriff

Anderson moved to dismiss the subject Complaint pursuant to Rules 12(b)(1) and 12(b)(6)

of the Federal Rules of Civil Procedure (ECF No. 3). Shortly thereafter, the City also moved

to dismiss pursuant to Rule 12(b)(6) (ECF No. 8).

STANDARDS OF REVIEW

### A.  Rule 12(b)(1) of the Federal Rules of Civil Procedure

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for

lack of subject matter jurisdiction challenges a court's authority to hear the matter brought

by a complaint.  *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  This

challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the

allegations in the complaint are insufficient to establish subject matter jurisdiction, or a

factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not

true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted).  With

respect to a facial challenge, a court will grant a motion to dismiss for lack of subject matter

jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction."

---

[6] *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978).
[7] As Counts V and VI of the Complaint concerned only former Defendant Col. Marcus Brown, these counts were dismissed without prejudice by this Court's Order on August 13, 2015.

*Davis*, 367 F. Supp. 2d at 799.

Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Sharafeldin v. Md. Dep't of Pub. Safety & Corr. Servs.*, 94 F. Supp. 2d 680, 684-85 (D. Md. 2000). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

## B. Rule 12(b)(6) of the Federal Rules of Civil Procedure

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be

alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

ANALYSIS

### A. Defendant Sheriff Anderson

Sheriff Anderson moves to dismiss all claims against him on several grounds.[8] First, he argues that he is a state officer protected in his official capacity from suits for monetary relief under the Eleventh Amendment, U.S. Const. amend. XI. As a state officer, Sheriff Anderson is not a "person" within the meaning of 42 U.S.C. § 1983. Second, Sheriff Anderson contends that he is entitled to qualified immunity for any claims against him in his individual capacity. Third, he argues that the *Rooker-Feldman* doctrine, as articulated by the

---

[8] In addition to the grounds described *supra*, Sheriff Anderson levies two supplemental arguments—first, that collateral estoppel bars Plaintiff's claims; and second, that he fails to state a claim for which relief may be granted under the balancing test of *Pickering v. Bd. of Educ.*, 391 U.S. 563, 573 (1968). As this Court finds that Sheriff Anderson's first three grounds are sufficient to dismiss the claims against him, this Court need not reach these supplemental arguments.

United States Supreme Court in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), precludes this Court from exercising subject matter jurisdiction over Plaintiff's claims. This Court will discuss each argument in turn.

### i.   Count I – Eleventh Amendment Immunity

Section 1983 creates a private right of action for any United States citizen seeking to remedy alleged constitutional violations. 42 U.S.C. § 1983. Under Section 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Section 1983 does not create "substantive rights;" rather, it provides "a method for vindicating federal rights elsewhere conferred." *Thompson v. Dorsey*, Civ. A. No. ELH-10-1364, 2011 WL 2610704, at *3 (D. Md. June 30, 2011) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

While Section 1983 provides this federal forum, it "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). The Eleventh Amendment "bars such suits unless the State has waived its immunity . . . or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Id.*

(internal citations omitted). The Eleventh Amendment also bars suits against state officers in their official capacity, yet the scope of this immunity is more limited than that of the State. *See generally Ford Motor Co. v. Dep't of the Treasury*, 323 U.S. 459 (1945). When a plaintiff seeks monetary damages against a state officer in his official capacity, the "action is in essence one for the recovery of money from the state." *Id.* at 464. The Eleventh Amendment thus acts to bar that suit. When a plaintiff seeks merely prospective injunctive relief against a state officer, the state officer is not entitled to Eleventh Amendment immunity. *See, e.g.*, *Quern v. Jordan*, 440 U.S. 332 (1979); *Milliken v. Bradley*, 433 U.S. 267 (1977).

In this case, Sheriff Anderson is a state officer and not an employee of the City. Under Maryland law, sheriffs are elected state officials. Md. Const. art IV, § 44. This characterization of sheriffs as state, rather than local, officers is consistent throughout Maryland statutory and case law. The Maryland Tort Claims Act, which waives sovereign immunity for certain actions brought in state court, defines "state personnel" as encompassing "a sheriff or deputy sheriff of a county or Baltimore City[.]" Md. Code Ann., State Gov't § 12-101(a)(6). Further, it is Maryland law, and not municipal law, that grants a sheriff the authority to hire and fire his deputy sheriffs. *See* Md. Code Ann., Cts. & Jud. Proc. § 2-309(d)(1)(ii). Although Baltimore City *pays* Sheriff Anderson's salary, Maryland law determines the amount. Md. Code Ann., Cts. & Jud. Proc. § 2-309(d)(1)(i).

As this Court has explained,

> As a matter of Maryland law, the Sheriff and Deputy Sheriffs
> [of a Maryland County] are officials and/or employees of the
> State of Maryland rather than of [the] County. The role of a
> sheriff as a State constitutional officer whose duties are subject
> to control by the General Assembly leads us to the conclusion
> that sheriffs are State rather than local government employees.

*Willey v. Ward*, 197 F. Supp. 2d 384, 387-88 (D. Md. 2002) (quoting *Rucker v. Harford County*, 558 A.2d 399, 402 (Md. 1989). The conclusion of *Willey* was not an anomaly, as this Court and Maryland's highest court have repeatedly held that sheriffs are *state* officers, and not local officers. *See McGrath-Malott v. Maryland*, Civ. A. No. RDB-06-879, 2007 WL 609909 (D. Md. Feb. 23, 2007); *see also Prince George's County v. Aluisi*, 731 A.2d 888, 895 (Md. 1999) ("Sheriffs and deputy sheriffs are state officials, not local government officials, and their duties are determined by state law, not locally enacted ordinances."); *Rossignol v. Voorhaar*, 321 F. Supp. 2d 642, 651 (D. Md. 2004) (discussing *Rucker*, 558 A.2d at 399, and noting that "Maryland's highest court has previously engaged in a detailed analysis of Maryland's Constitution and Code to conclude that a sheriff and his deputies are not state employees."). The Maryland Code and case law thus reach the same conclusion: a sheriff—here, Sheriff Anderson—is a state officer.

Plaintiff urges this Court to ignore this entire field of law and characterize Sheriff Anderson as an officer of Baltimore City. Lane argues that this Court rejected the overwhelming Maryland statutory and case law in *Durham v. Somerset County, Md.*, Civ. A. No. WMN-12-2757, 2013 WL 1755372 (D. Md. Apr. 23, 2013). His reliance on *Durham*, an unreported case, is misguided. First, *Durham* is factually inapposite to the present action, as the state appellate court overturned the termination of the plaintiff deputy sheriff. Second, Lane's argument rests on a mere footnote wherein this Court stated, in *dicta*, that "counsel has made *some* convincing arguments" in support of characterizing sheriffs as local officers, but that "[t]he Court finds it unproductive, however, to address those arguments" at that

time. *Id.* at *3 n.3 (emphasis added). This Court is unwilling to overturn this entire field of law on the basis of *dicta* in a footnote.

Plaintiff also contends that this Court must apply the test articulated by the United States Court of Appeals for the Fourth Circuit in *Ram Ditta v. Maryland National Capital Park and Planning Commission*, 882 F.2d 456 (4th Cir. 1987), to determine whether Sheriff Anderson is a state or local officer. This Court has previously applied the *Ram Ditta* test to hold that employees of the Baltimore City Police Department are local, and not state, employees. *Alderman v. Baltimore City Police Dep't*, 952 F. Supp. 256 (D. Md. 1997). Yet, unlike in the case of the Baltimore City Police Department, this Court need not apply the *Ram Ditta* test to the subject action. Maryland Code and case law make clear that sheriffs are state officers, with authority derived from state law. *See McGrath-Malott v. Maryland*, 2007 WL 609909, at *5 (rejecting the application of the *Ram Ditta* factors and explaining that "Maryland statutory and case law expressly treat sheriffs as state employees . . .").

As a state officer, Sheriff Anderson is entitled to Eleventh Amendment immunity for official capacity claims seeking monetary relief. Maryland has waived its sovereign immunity for certain claims filed in *state* court, but not federal court. *See* Maryland Tort Claims Act, Md. Code Ann., State Gov't § 12-104. Not only is Sheriff Anderson entitled to Eleventh Amendment immunity, but he also is not a "person" under Section 1983. This suit, although ostensibly against Sheriff Anderson, is actually a suit against the State of Maryland. *See Will*, 491 U.S. at 71 (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)) (explaining that "[o]bviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").

11

Neither a state nor its officers, acting in their official capacities, are "person[s]" within the meaning of Section 1983. Accordingly, Lane's claim for monetary relief against Sheriff Anderson in his *official* capacity (Count I) is DISMISSED.

### ii.    Count I – Qualified Immunity

When a state officer is sued in his *individual* capacity, he may be entitled to qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). Qualified immunity affords a government officers protection from suits for monetary damages when the officers have acted in good faith. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This brand of immunity is "an affirmative defense that shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013) (internal quotation marks omitted); *see also Harlow*, 457 U.S. at 818 (1982). The doctrine is intended to apply to "gray areas, where the law is unsettled or murky," rather than situations where the government actors were "plainly incompetent or . . . knowingly violate[d] the law." *Occupy Columbia*, 738 F.3d at 118.

Qualified immunity thus shields government officials from Section 1983 claims unless "(1) the allegations underlying the claim, if true, substantiate a violation of federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known." *Id.* Regarding the first prong, the examining court "should identify the right at 'at a high level of particularity.'" *Bland*, 730 F.3d at 391 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999)). Moreover, a plaintiff

may overcome a claim of qualified immunity only if "the contours of the constitutional right [are] 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Bland*, 730 F.3d at 391 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

In this case, Plaintiff claims that Sheriff Anderson violated his right to free speech by increasing the sanction from suspension to termination. The First Amendment clearly establishes the right to free speech, providing in relevant part, "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Yet, the mere fact that the right is clearly established is insufficient to rebut a claim of qualified immunity. Even if all allegations underlying Lane's claims are true, it is not clear Sheriff Anderson's actions violated the First Amendment. Assuming that a violation did occur, a reasonable officer in Sheriff Anderson's position would not understand that he had violated Lane's right by increasing the sanction to termination. Sheriff Anderson acted within his authority under Law Enforcement Officers' Bill of Rights, thus a reasonable officer would believe that he was acting legally. Indeed, the Maryland Court of Special Appeals upheld Sheriff Anderson's discretion to increase the termination. As Maryland statutory and case law both authorize Sheriff Anderson's actions, it is even less likely that a reasonable officer would understand a violation had occurred. As such, Sheriff Anderson is entitled to qualified immunity in his *individual* capacity and Plaintiff's claim for monetary relief (Count I) is DISMISSED.

### iii.    Count III – The *Rooker-Feldman* Doctrine

Alternatively, in Count III, Lane seeks injunctive relief and reinstatement to his former position as a deputy sheriff. Through *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Supreme Court

established the principle that a federal district court does not have appellate jurisdiction to overturn a state court judgment. *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 727-28 n.7 (D. Md. 2011) (citing *Rooker*, 263 U.S. at 415-16 and *Feldman*, 460 U.S. at 482-86). The *Rooker-Feldman* doctrine is a "narrow doctrine" in that it precludes federal court "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments." *Adkins v. Rumsfeld*, 464 F.3d 456, 463-64 (4th Cir. 2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). In other words, "if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal district court." *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006).

The *Rooker-Feldman* doctrine precludes this Court from exercising subject matter jurisdiction over Plaintiff's claims. Lane is a "state-court loser," as he unsuccessfully appealed his termination. After this loss, his termination was final. In the present action, he seeks, among other relief, an injunction ordering his immediate reinstatement. *Exxon* narrowed the scope of the *Rooker-Feldman* doctrine, but the doctrine is not without teeth. As long as the "state-court loser" seeks to redress the injury resulting from the state court's decision, *Rooker-Feldman* applies. *See Davani*, 434 F.3d at 718-19. Lane's constitutional claims alone, without the request for reinstatement, likely would be insufficient to invoke *Rooker-Feldman*. *See id.* at 719. The injunction for reinstatement, however, seeks to redress the specific injury caused by the decision of the Court of Special Appeals—his termination. Lane's claims are

14

thus "inextricably linked" to the state court decision. Accordingly, *Rooker-Feldman* precludes this Court from exercising subject matter jurisdiction over Plaintiff's claims.

## B. Defendant City

On the theory that Sheriff Anderson is a local actor, Lane alleges two claims against the City. In Count II, he asserts a *Monell* claim, arguing that Sheriff Anderson, as the employee and "final policymaker" for the City, perpetuated a policy of retaliation for First Amendment-protected activities. In Count IV, he contends that the City is liable for Sheriff Anderson's alleged retaliatory acts under Article 24 of the Maryland Declaration of Rights. Each claim will be addressed in turn.[9]

### i.    Count II – § 1983 *Monell* Claim

Under *Monell*, 436 U.S. at 658, a Section 1983 cause of action may lie against a local government or municipality when execution of the government's unconstitutional policy or custom causes a plaintiff injury. *See Walker v. Prince George's Cnty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009) (stating that the liability of the municipality arises only where the employees' unconstitutional actions are taken in furtherance of a municipal policy or custom). In order to support a claim, "(1) the municipality must have actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers, as a matter of specific intent or deliberate indifference, to correct or terminate the improper custom and usage." *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 210 (4th Cir. 2002) (internal quotation marks omitted).

---

[9] This Court notes that *Rooker-Feldman* bars this Court from exercising subject matter jurisdiction over the present action. However, this Court will consider the City's arguments in favor of dismissing Counts II and IV.

In this case, Lane's allegations fail to state a viable *Monell* claim. As described *supra*, Sheriff Anderson is a state officer, and not an employee of the City. Sheriff Anderson derives his authority to hire fire and his deputy sheriffs from state law, thus the City does not control personnel decisions regarding deputy sheriffs. Sheriff Anderson thus sets the policies for firing deputy sheriffs, but he does so on behalf of the State of Maryland. This Court reached the same conclusion in *McGrath-Malott*, explaining that the municipality in question "has no control over personnel actions affecting deputy sheriffs, [thus] it cannot be liable for violating [the deputy's] federal or state constitutional rights . . ." 2007 WL 609909, at *5. As such, the City has no authority over Sheriff Anderson and Count II is DISMISSED.

ii.    **Count IV – Maryland Declaration of Rights**

While Section 1983 provides a right of recovery against local government for federal constitutional violations, a plaintiff seeking "redress for State violations [proceeds] through a common law action for damages." *DiPino v. Davis*, 729 A.2d 354, 371 (Md. 1999). These "constitutional torts," unlike their common law kin, "have the more narrow focus of protecting citizens from certain unlawful acts committed by government officials." *Id.* To ensure that protection, local governments have *respondeat superior* liability for those constitutional torts "committed by their agents and employees within the scope of the employment." *Id.*

The theory of *respondeat superior*, however, requires that the actors committing the alleged violations are employees of the local government. *See Boyer v. State*, 594 A.2d 121, 128 (Md. 1991) (refusing to hold a municipal government liable for the alleged torts of deputy sheriffs on the theory that deputy sheriffs are state, and not local, employees). Yet Sheriff

16

Anderson is not an employee of the City. As discussed in detail *supra*, Sheriff Anderson is a state officer under Maryland law. The City, as a local entity, is potentially liable only for the torts committed by its employees within the scope of their employment. It cannot be liable for the constitutional torts allegedly committed by a state employee, such as Sheriff Anderson. *See Rucker*, 558 A.2d at 407 ("counties and municipalities in Maryland are generally not liable under the doctrine of *respondeat superior* for the tortious acts of State officials or State employees acting in the scope of their employment."). Accordingly, Count IV is hereby DISMISSED.

CONCLUSION

For the reasons stated above, Defendant Sheriff Anderson's Motion to Dismiss (ECF No. 3) is GRANTED and Defendant City's Motion to Dismiss (ECF No. 8) is GRANTED. This case is DISMISSED WITH PREJUDICE.

A separate Order follows.


Dated: September 1, 2015                    _____/s/_____
                                            Richard D. Bennett
                                            United States District Judge